UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LINDA F. DARDEN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:08-00245 |
| ) | JUDGE HAYNES |
| ) | |
| AMERICAN INTERNATIONAL GROUP ) | |
| INC., AMERICAN INTERNATIONAL ) | |
| LIFE ASSURANCE COMPANY ) | |
| OF NEW YORK, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Plaintiff, Linda F. Darden, filed this action under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. seeking an award of long-term disability benefits ("LTD") under Defendant American International Group, Inc.'s ("AIG") group disability income policy. Plaintiff's former employer's policy is issued by the Defendant American International Life Assurance Company of New York ("AILA"), that also administers that policy. The Defendants filed the Administrative Record ("AR") (Docket Entry No. 26). Both parties have moved for judgment in their favor.

Before the Court are Plaintiff's motion for judgment on the administrative record (Docket Entry No. 27) and Defendant's response for judgment in their favor (Docket Entry No. 28). In sum, Plaintiff argues that Defendants' decision terminating and denying her LTD was arbitrary and capricious because Defendants disregarded medical evidence from her treating physicians and the

Social Security Administration's disability determination in favor of the opinions of the Defendants' physicians. The Defendants contend, in sum, that their decision to terminate benefits was based upon the opinions by Plaintiff's former treating physician Dr. Dressler, by Dr. Reeder, and outside consultant Dr. Siegel, as well as a vocational assessment and Plaintiff's own statements regarding her activities and abilities.

For the reasons set forth below, the Court concludes that Defendants' decision to deny Plaintiff long-term disability benefits was neither arbitrary nor capricious as the Defendants presented a reasoned explanation based on the medical evidence for their denial.

## A. REVIEW OF THE RECORD

American General Life & Accident Insurance Company in Nashville, Tennessee, employed Plaintiff as a customer service specialist. (Docket Entry No. 26, AR at 529). Plaintiff last worked on January 29, 2003. Id. On January 30, 2003, Plaintiff was diagnosed with obesity, severe lymphedema, and sleep apnea. Id. at 523.

AIG is the policyholder of a long-term disability plan issued by AILA, Policy Number GLT-10761. Id. at 010-11. The Policy provides long-term disability benefits to employees who become disabled as defined in the Policy. Id. at 011. An employee of a participant employer is deemed to be an employee of AIG for insurance purposes. Id. at 036. The policy grants ALIA "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of" the Policy. Id. at 026.

The Policy designates employees earning less than $100,000 annually as members of Class 2 under the Policy. Id. at 011. An employee who is a member of Class 2 has a disability or is disabled if:

>   (1) during the Elimination Period; and
>   (2) for the next 24 months, you are prevented by:
>   . . .
>   (b) sickness . . .
>   from performing one or more of the Essential Duties of Your Occupation, and as a result Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings.
>
>   After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

Id. at 013. The "Elimination Period" is the period of time that a claimant must be disabled before the benefits become payable, and the period is the longer of the first 180 consecutive days of disability or "the expiration of any Employer sponsored short-term disability benefit or salary continuation program" that is not required by state law. Id. at 012. "Any Occupation" is defined as "an occupation for which you are qualified by education, training or experience." Id. "Essential Duty" is defined as "a duty that: (1) is substantial, not incidental; and (2) is fundamental or inherent to the occupation; and (3) can not be reasonably omitted or changed." Id. at 013.

Plaintiff applied for long-term disability benefits under the Policy, citing the lymphedema in both her legs. Id. at 183-84. On July 1, 2003, Plaintiff's long-term disability claim was approved by AILA. Id. at 501-02. On July 29, 2003, at the end of the 180-day elimination period, Plaintiff's long-term disability benefits were paid and payments continued until December 15, 2006. Id. at 501-02, 360.

On June 10, 2005, cardiologist Dr. Tracy Callister examined Plaintiff and concluded that Plaintiff's hypertension and obstructive sleep apnea were controlled in treatment. Id. at 418-19. On June 30, 2005, Plaintiff received a Social Security disability award, effective January 31, 2003. Id. at 340-46.

On July 28, 2005, the twenty-four month period requiring Plaintiff's prevention from performing one or more of the essential duties of her occupation to be considered disabled ended. Id. at 529. After that date, the Policy required that Plaintiff be prevented from performing one or more of the essential duties of any occupation in order to be considered disabled. Id. at 501.

On June 13, 2006, Plaintiff saw Dr. Neil M. Dressler, her treating physician. Id. at 433. Dr. Dressler stated that Plaintiff was "capable of clerical/administrative (sedentary) activity." Id. at 402. Dr. Dressler described Plaintiff as improved, ambulatory, and ineligible for Social Security Disability benefits. Id. Dr. Dressler considered Plaintiff to have a Class IV physical impairment, i.e., "moderate limitation of functional capability; capable of clerical/administrative (sedentary) activity," with restrictions that she should not walk or stand for long periods of time. Id. at 401-02. In Dr. Dressler's opinion, Plaintiff's current job or other work could be modified to allow Plaintiff to handle such work with her impairment and advised Plaintiff to begin trial employment "at your discretion." Id. at 402.

On October 18, 2006, Disability Reinsurance Management Services ("DRMS") conducted a telephone interview with Plaintiff about her disability claim. Id. at 358. In this interview, Plaintiff stated that she did not want to have gastric bypass surgery because it would cause her to have extra skin. Id. at 392. As to her daily activities, Plaintiff could drive, although not in the city; was able to do housework and laundry with rests, when necessary; and was unable to walk for long periods of time and walking upstairs was very painful. Plaintiff could perform daily living activities without assistance, including her daily use of a computer and shopping for personal items without the use of a motorized cart, but not extensive grocery shopping. Id. at 392-95.

On November 21, 2006, Dr. Thomas A. Reeder, a medical consultant for DRMS, analyzed Plaintiff's file. Id. at 378-82. Dr. Reeder noted that Plaintiff performed "household chores, prepared meals, performs activities of daily living, and apparently at one point was the caregiver for her father who had Alzheimer's disease." Id. at 381. Dr. Reeder concluded that, although morbidly obese and with lymphedema in her lower extremities, Plaintiff should be able to perform full-time sedentary work. Id. at 381-82. As part of his review, Dr. Reeder spoke with Dr. Dressler and summarized their conversation in a letter to Dr. Dressler. Id. at 373-74, 382.[1] Dr. Dressler signed and returned a copy of Dr. Reeder's letter, agreeing that Plaintiff was capable of sedentary work. Id. at 366-370.

On November 22, 2006, AILA requested that Howard Vocational Consulting ("HVC") complete a vocational assessment of Plaintiff's transferable skills. Id. at 362-67. HVC's assessment identified eight sedentary employment options for Plaintiff based on her education, work experience, transferable skills, and residual functional capacity, all of which were available in Plaintiff's geographic area. Id. at 362-65. All of these occupations were performed at a sedentary exertion level, involved lifting of no more than ten pounds, mostly sitting and only occasional standing and walking. Id. at 363. The assessment also evaluated and discussed a walk-in occupational analysis conducted on October 19-20, 2006. Id. at 366, 387-91.

On December 12, 2006, AILA sent a letter to Plaintiff informing her that her disability benefits would terminate after December 15, 2006. Id. at 357-61. AILA cited Plaintiff's medical records, including Dr. Dressler's statements regarding Plaintiff's ability to return to work with

---

[1] Dr. Dressler's Attending Physician Statement, completed on February 22, 2005, cites a physical Class V capacity (incapable of sedentary work). Id. at 375-76. However, Dr. Dressler clarified that the February 22, 2005, Attending Physician Statement classifying Plaintiff as having Class V physical impairment was completed in error. Id. at 370.

5

restrictions, Dr. Reeder's analysis, and the results of the vocational review as the grounds for the denial. Id.

On February 21, 2007, Plaintiff changed treating physicians and went to see Dr. John R. Chauvin. Id. at 303. One of Plaintiff's reasons for switching treating physicians was because Dr. Dressler opined that Plaintiff was no longer disabled. Id.

On May 24, 2007, Plaintiff appealed the termination of her benefits. Id. at 334. Plaintiff submitted a letter from Dr. Chauvin, concluding that Plaintiff was unable to work. Id. at 335. Dr. Chauvin cited Plaintiff's morbid obesity, significant lymphedema and venous insufficiency as precluding her ability to stand for longer than thirty (30) minutes or walk for a prolonged period of time and the she was afflicted with chronic pain and swelling of her lower extremities. Id. Plaintiff also submitted information related to the Social Security disability award. Id. at 340-48.

AILA submitted Plaintiff's additional documentation for a second review by Dr. Reeder. Id. at 332-33. Relying on all the records, including Plaintiff's newly submitted records, Dr. Dressler's attending physician statements and the activities Plaintiff herself reported performing, Dr. Reeder concluded that Plaintiff was able to do sedentary work. Id. at 329-31. Among other findings, Dr. Reeder observed that there were unsupported diagnoses in the Social Security benefits decision, that Dr. Chauvin's treatment records for Plaintiff did not include physical examinations or laboratory tests, that Dr. Chauvin's diagnosis of hypertensive cardiovascular disease was inconsistent with Plaintiff's cardiologist's evaluation, and that despite Dr. Chauvin's claim that Plaintiff was in constant pain, there were no pain medications prescribed for her. Id. at 330-31.

AILA also submitted Plaintiff's file to the University Disability Consortium ("UDC") for a comprehensive review to be conducted by a specialist selected by UDC. Id. at 258-59, 262. In a

report dated August 7, 2007, Dr. Jerome D. Siegel, board certified in internal medicine and occupational medicine, conducted the review and concluded that based on the medical records Plaintiff "should be physically capable of at least sedentary to light physical demand work activities" with certain physical restrictions. Id. at 225, 236. On August 28, 2007, AILA affirmed the denial of benefits to Plaintiff in a letter summarizing the information considered and explaining the basis for the decision. Id. at 214-17.

On October 24, 2007, Plaintiff requested a second appeal of AILA's denial of benefits. Id. at 171-72. Plaintiff submitted additional information, including a July 13, 2007 medical evaluation by Dr. Grafton H. Thurman and an October 23, 2007 letter from Dr. Chauvin. Id. at 165-170. Dr. Chauvin noted that, in addition to Plaintiff's morbid obesity and lymphedematous swelling of her lower extremities, Plaintiff had developed progressive arthritis in her knees as a result of her obesity. Id. at 165. Dr. Chauvin concluded that Plaintiff's condition "leaves her with continued inability to sit for any length of time, to ambulate, to rise and descend stairs." Id. at 166.

Dr. Thurman's basis for concluding that Plaintiff cannot participate in sedentary office work is that "she can not stand for more than one hour in a work day" and "she must stay lying down preferably or with her legs propped up sitting virtually at all times." Id. at 167. Dr. Thurman stated that these limitations would make sedentary physical activity "too cumbersome to be satisfactory." Id. According to Dr. Thurman, the functional limitations preventing Plaintiff from returning to work was that she could not "stand for more than 1 hour in total in a work day and that she needs to keep both legs propped up at all times. Her arms and legs otherwise have full strength." Id. Dr. Thurman concluded that Plaintiff "is not likely to ever return to work. Her prognosis is hopeless for further

improvement. Social Security is of the same opinion. This massive degree of lymphedema is untreatable. Tight wrapping does very little for lymphedema that is so far progressed." Id. at 167.

The additional information submitted by Plaintiff was forwarded to Dr. Siegel for consideration. Id. at 161-163. Dr. Siegel's review included a telephone discussion with Dr. Chauvin. Id. at 130-139. Dr. Siegel reported his findings in a letter dated January 8, 2008. Id. Also included in Dr. Siegel's report were information regarding lymphedema, id. 142-152, and a letter to Dr. Chauvin summarizing their conversation.[2] Id. at 153-157. Dr. Siegel concluded that Plaintiff should be capable of at least sedentary-light physical demand work activities with physical restrictions. Id. at 138. Dr. Siegel noted that the additional information submitted by Plaintiff was "based on self-reported data by [Plaintiff] and not directly corroborated by a healthcare professional, including Dr. Thurman, Dr. Chauvin, or any Physical Therapist, Occupational Therapist, or visiting Nurse." Id. at 138-39. On January 23, 2008, AILA again affirmed the denial of benefits. Id. at 126-128.

## B. CONCLUSIONS OF LAW

"Under ERISA, an insurer granted discretion to determine benefits by the terms of a plan is subject to an extraordinarily lenient standard of review. The 'arbitrary and capricious' standard requires only that the claim fiduciary's decision be 'rational in light of the plan's provisions.'" Nicholas v. Standard Ins. Co., No. 00-1728, 2002 WL 31269690, at *7 (6th Cir. Oct. 9, 2002) (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988)). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary

---

[2]Although Dr. Siegel requested Dr. Chauvin to respond with any corrections regarding their conversation, Dr. Chauvin did not so respond. Id. at 155-56.

and capricious." David v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989). Given that the plan grants ALIA the discretion and authority to determine eligibility for LTD benefits and to construe and interpret all terms and provisions of the Policy, id. at 026, the Court reviews the benefits decision at issue under an arbitrary and capricious standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

> The Sixth Circuit defined the arbitrary and capricious standard as follows:
>
> The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Courts must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.

Smith v. Continental Cas. Co., 450 F.3d 253, 259 (6th Cir.2006) (citing Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir.2000)). To withstand judicial review, an administrator's decision must be based on a reasonable interpretation of the plan and the administrator must have the ability to articulate a reasoned, evidentiary-based explanation for the outcome. Powell v. Premier Mfg. Support Servs., Inc., No. 1-05-0012, 2006 WL 1529470 at *8 (M.D. Tenn. June 1, 2006).

To determine whether an abuse of discretion occurred, the Court must also consider whether a conflict of interest exists. A conflict of interest exists "when the insurer both decides whether the employee is eligible for benefits and pays those benefits." Evans v. Unumprovident Corp., 434 F.3d 866, 876 (6th Cir.2006) (citing Gismondi v. United Techs. Corp., 408 F.3d 295, 299 (6th Cir.2005)). In Evans, the Sixth Circuit synthesized a definition of this conflict for ERISA purposes, stating:

> "[T]here is an actual, readily apparent conflict . . . not a mere potential for one" where a company both funds and administers [the policy] because "it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the

denial or discontinuation of benefits."... [B]ecause [the] defendant maintains such a dual role, "the potential for self-interested decision making is evident."

Id. (citations omitted).

Given that the issue is LTD benefits and the payment of these benefits will involve substantial funds, the Court concludes that the Defendants have a conflict of interest in this action.

On the effect of this conflict, the Supreme Court stated in Firestone: "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 109 (quoting Restatement (Second) of Trusts § 187, Comment d (1959)). Less deference may be given upon proof that the denial was motivated by self-interest or bad faith. See Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir.1998).

"The arbitrary and capricious standard is the least demanding form of judicial review." Hunter v. Caliber Sys., Inc., 220 F.3d 702, 710 (6th Cir. 2000) (citation and internal quotation marks omitted). Yet, the Sixth Circuit clearly stated that the arbitrary and capricious standard is not the equivalent of total deference to plan administrators:

> [M]erely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions. As we observed recently, "[t]he arbitrary-and-capricious ... standard does not require us merely to rubber stamp the administrator's decision." Jones v. Metropolitan Life Ins. Co., 385 F.3d 654, 661 (6th Cir.2004) (citing McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir.2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." McDonald, 347 F.3d at 172. Our task at all events is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." Id.

Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). In conducting an arbitrary and capricious review of the administrative record, the Court is to consider only the facts known to the administrator or fiduciary at the time it made the decision. Id. at 378-79.

The administrator's decision must be based on a reasonable interpretation of the plan, Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund, 203 F.3d 926, 933 (6th Cir. 2000), and it must be "possible to offer a reasoned explanation, based on the evidence, for a particular outcome." Evans, 434 F.3d at 876 (quoting Perry v. United Food & Commercial Workers Dist. Unions 405 & 422, 64 F.3d 238, 241 (6th Cir.1995)). The administrator's decision "will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" Id. ( quoting Baker v. United Mine Workers of America Health & Retirement Funds, 929 F.2d 1140, 1144 (6th Cir.1991)). The Court's review "'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issue.'" Id. (quoting McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir.2003)). As a general rule, the administrator's written decision and the information in the administrative record are the bases for judicial review. Peruzzi, 137 F.3d at 433-34.

Plaintiff contends that the medical evidence in the record and/or her treating physician's opinion does not support Defendants' denial. In essence, Plaintiff contends that Defendants ignored Drs. Chauvin's and Thurman's opinions and the SSA's disability determination. In Plaintiff's view, the only contrary evidence is AIG's doctor's opinion that fails to consider Dr. Chauvin's and Dr. Thurman's opinions confirming Plaintiff's disability. In response, Defendants contend that their denial of LTD benefits is supported by substantial evidence as Defendants considered Plaintiff's

entire medical record, including the opinion of Dr. Dressler, her treating physician prior to February 2007; Dr. Reeder's conclusion after a review of the medical evidence; and the vocational expert's and Dr. Siegel's independent conclusions.

When the parties cite conflicting opinions of physicians, the Sixth Circuit has observed:

> Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

McDonald, 347 F.3d at 169. Thus, while there is "'nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination,' Calvert v. Firstar Fin., Inc., 409 F.3d 286, 296 (6th Cir.2005), [such a review] is a factor to be considered in reviewing the propriety of an administrator's decision regarding benefits." Evans, 434 F.3d at 877.

Yet, the mandatory deference accorded to treating physicians under the Social Security Act is inapplicable to ERISA claims. Id. The Supreme Court has held that:

> "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). The Supreme Court nonetheless admonished that "[p]lan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id.

Id. Further, "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." Whitaker v. Hartford Life and Acc. Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005).

Here, the evidence reveals that Dr. Dressler, Plaintiff's previous treating physician, stated that Plaintiff was "capable of clerical/administrative (sedentary) activity." Dr. Reeder noted that Plaintiff

12

performed household chores, prepared meals, drove and performed activities of daily living, and concluded that Plaintiff could perform full-time sedentary work. In conducting the review, Dr. Reeder spoke with Dr. Dressler. The Defendants also considered the conclusions from independent consultants, HVC and Dr. Siegel with UDC. HVC identified eight sedentary employment options for Plaintiff that were available in Plaintiff's geographic area. All of these occupations were performed at a sedentary exertion level and involved lifting of no more than ten pounds with mostly sitting and only occasional standing and walking. Dr. Siegel concluded that Plaintiff was capable of sedentary or light physical work with certain physical restrictions. Dr. Siegel also noted that Drs. Chauvin's and Thurman's opinions were based on the self-reported data by Plaintiff and those opinions were not corroborated by the healthcare professionals, including Dr. Thurman, Dr. Chauvin, or any physical therapist, occupational therapist, or visiting nurse. Dr. Siegel also requested Dr. Chauvin to respond with any corrections regarding their conversation, to which Dr. Chauvin failed to do.

Defendants' employment of independent expert review and affording Plaintiff an opportunity to respond to the review are indicia of a reasoned decision. Noland v. Prudential Ins. Co. of America, 187 Fed. Appx. 447, 452 (6th Cir. 2006) (finding significant that "Prudential not only conducted an in-house clinical review of Noland's medical records, but employed an outside physician specializing in occupational medicine to conduct an independent review. In addition, Prudential offered Noland's physicians the opportunity to comment on the report which they failed to do.").

Based upon Plaintiff's medical records and the administrative record, the Court concludes that the Defendants' decision to deny Plaintiff long-term disability benefits was neither arbitrary nor

capricious. Accordingly, the Court concludes that judgment on the administrative record should be granted in Defendants' favor and Plaintiff's motion for judgment on the administrative record (Docket Entry No. 27) should be denied.

An appropriate Order is filed herewith.

ENTERED this the 22nd day of November, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge